**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| ANN MARIE PARSELL,<br><br>                         Plaintiff,<br><br>        vs.<br><br>EQUIFAX INFORMATION SERVICES,<br>LLC, EXPERIAN INFORMATION<br>SOLUTIONS, INC., TRANS UNION, LLC,<br>FIRST TECH FEDERAL CREDIT UNION,<br>FINANCIAL ASSISTANCE, INC.,<br><br>                         Defendants. | Civil Action No.: 5:22-cv-1002<br><br><br>**COMPLAINT AND DEMAND FOR<br>JURY TRIAL** |

Plaintiff Ann Parsell ("Plaintiff"), by and through the undersigned counsel, hereby submits her Complaint and Demand for Jury Trial ("Complaint") against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union," collectively with Equifax and Experian, the "CRA Defendants"), First Tech Federal Credit Union ("First Tech"), and Financial Assistance, Inc. ("Financial Assistance," collectively with First Tech, the "Furnisher Defendants") (all collectively, the "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION AND VENUE

1.      Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681 et seq.

2.       Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3.      Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at this District, such that personal jurisdiction is established.

1

## PARTIES

4.      Plaintiff Ann Parsell is a natural person who resides in New Braunfels, Texas, within the confines of Comal County, Texas. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

5.      Defendant Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Equifax is incorporated in Delaware, and its principal place of business is located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax is registered to accept service through Corporation Service Company, located at 2 Sun Court, suite 400, Peachtree Corners, Georgia 30092.

6.      Defendant Experian is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Experian is incorporated in Ohio and maintains its principal place of business and is registered to accept service at 475 Anton Boulevard, Costa Mesa, California 92626.

7.      Defendant Trans Union is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Trans Union is incorporated in Delaware, and its principal place of business is located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. Trans Union is registered to accept service through Prentice-Hall Corporation located at 801 Adlai Stevenson Drive, Springfield, Illinois 36106.

8.      Defendant First Tech is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher" as that term is used by the FCRA. First Tech is incorporated in California. Its principal place of business is located at 6201 Sanger Ave., Waco, Texas 76710, where it can be served.

9.      Defendant Financial Assistance is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher" as that term is used by the FCRA. Financial Assistance is incorporated

in Washington, and its principal place of business is located at 1130 140th Ave NE, Suite 100A,

Bellevue, Washington 98005. Financial Assistance is registered to accept service through Cella

Heckman located at 24624 132nd St SE, Monroe, Washington 98272.

10.    At all times relevant to this Complaint, Defendants acted through their agents,

employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties,

subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11.    Plaintiff incorporates by reference the above paragraphs of this Complaint as

though fully stated herein.

12.    Plaintiff is a single mother who lives with and cares for both her teenage daughter

and her elderly parents. She is also a victim of identity theft.

13.    The immediate litigation is an action under the FCRA. The FCRA regulates the

conduct of, among other things, consumer reporting agencies and entities who furnish information

to consumer reporting agencies.

14.    The FCRA provides protection for consumers, like Plaintiff, who have been victims

of identity theft.

15.    Particularly relevant for the purposes of this litigation is the FCRA's requirement

that when a consumer reporting agency is notified by a consumer that information in the

consumer's credit file resulted from an alleged identity theft, the consumer reporting agency is

required to block such information from being reported.[1]

---

[1] *See* 15 U.S.C. § 1681c-2.

16.    Beginning in approximately 2017, Plaintiff's sister carried out an elaborate scheme to defraud Plaintiff, open credit accounts in Plaintiff's name, and generally make Plaintiff's life miserable.

17.    In late 2021, Plaintiff received one (1) or more collections letter from Financial Assistance, alleging Plaintiff owed it a debt relating to the purchase of a motor vehicle in 2017. Plaintiff initially assumed this was a scam and ignored the letters at first.

18.    However, in or around October 2021, Plaintiff learned that two credit accounts that she did not recognize were being reported in her credit reports by the three major credit bureaus, the CRA Defendants.

19.    Specifically, each of the bureaus were reporting a First Tech tradeline (Account No. 933***, the "First Tech Account") and a Financial Assistance tradeline (Account No. J209***, the "Financial Assistance Account"). Plaintiff did not recognize either of these accounts, never applied for credit with either of these creditors, and never received the benefit of credit through either of these creditors.

20.    Plaintiff learned around this time that the debt was related to a purchase made by her sister for a Mitsubishi automobile in 2017. Plaintiff's sister obtained an auto loan through First Tech using a forged identification card bearing Plaintiff's personal identifying information, and completed an application posing as Plaintiff.

21.    When Plaintiff's sister later crashed the car, totaling it, her sister's insurance did not pay the outstanding loan amount, nor did Plaintiff's sister.

22.    Plaintiff was wholly unaware that the First Tech loan had ever bene applied for in her name until she began receiving the collections letters, prompting her to investigate further.

23.    Moreover, each of these tradelines reflected severe derogatory information.

24.     The First Tech Account reflected that the account had been charged off in July 2018, with a past due amount of $18,159, and reflected multiple late payments.

25.     The Financial Assistance Account was a collections account which had been placed for collection in September 2021, with an unpaid amount of $20,900.

26.     Furthermore, the First Tech Account and the Financial Assistance Accounts were for the same underlying alleged debt, meaning that even if the debt was owed by Plaintiff – which it was not – the information being reported in Plaintiff's credit file(s) and/or consumer report(s) was further inaccurate as this information was duplicative.

27.     Upon information and belief, an account appearing as "charged off" in a consumer's credit report is seriously harmful to that consumer's credit score and overall credit worthiness.

28.     Upon information and belief, a collections account appearing in a consumer's credit report is seriously harmful to that consumer's credit score and overall credit worthiness.

29.     On or about December 3, 2021, Plaintiff filed a police report with the Bexar County Sheriff's Department (Case No. 2021-BCSO-22604), alleging that Plaintiff's sister had stolen her identity, and detailing many of the harms suffered by Plaintiff as a result.

30.     Upon information and belief, around the same time, Plaintiff contacted each of the CRA Defendants to dispute their reporting concerning the First Tech Account and the Financial Assistance Account (the "December 2021 Disputes").

31.     Upon information and belief, one or more of the national consumer reporting agencies forwarded the December 2021 Disputes to both First Tech and Financial Assistance.

32.     Upon information and belief, following the December 2021 Disputes, Equifax continued to report both the First Tech Account and the Financial Assistance Account in Plaintiff's

credit file and/or consumer report(s), though Equifax included notation in its reporting that the First Tech Account had been disputed.

33.    Upon information and belief, following the December 2021 Disputes, Experian continued to report both the First Tech Account and the Financial Assistance Account in Plaintiff's credit file and/or consumer report(s).

34.    Upon information and belief, following the December 2021 Disputes, Trans Union blocked the First Tech Account from appearing in Plaintiff's credit file and/or consumer report(s). However, Trans Union continued to report the Financial Assistance Account in Plaintiff's credit file and/or consumer report(s), though Trans Union included notation in its reporting that the Financial Assistance Account had been disputed.

35.    Determined to get these inaccurate accounts removed from her credit reports in their entirety due to the harm they were causing Plaintiff, she endeavored to take additional steps to ensure the compliance of the national consumer reporting agencies and the furnishers of the inaccurate information.

36.    Accordingly, on or about January 26, 2022, Plaintiff completed a Federal Trade Commission ("FTC") Identity Theft Report (FTC Report No. 143914749).

37.    In Report No. 143914749, Plaintiff detailed the specific inaccuracies in her credit reports concerning the First Tech Account and the Financial Assistance Account. She further noted that there was an address being reported in her credit reports that she did not recognize.

38.    Plaintiff signed Report No. 143914749 **under penalty of perjury**.

39.    Plaintiff also obtained documentation from First Tech which evidenced the original credit application which was used to open the First Tech Account. This application included a

phone number with which Plaintiff was unfamiliar – presumably, both the number and address belonged to Plaintiff's sister.

40.     Armed with this information and documentation, Plaintiff submitted a second set of disputes to Experian, Equifax, and Trans Union on or about February 3, 2022 (the "February 2022 Disputes").

41.     Within the February 2022 Disputes, Plaintiff included: 1) a letter detailing the nature of the identity theft, including details about the specific inaccuracies which existed in Plaintiff's credit file(s); 2) a copy of the FTC Identity Theft Report; 3) the original First Tech application for credit, with the inaccurate information circled in red; 4) Plaintiff's identification card; and, 5) a piece of mail with Plaintiff's name and address on it.

42.     In short, the February 2022 Disputes included more than sufficient information for Experian, Equifax, and Trans Union to quickly and conclusively determine that the information each was reporting concerning the First Tech Account and the Financial Assistance Account was the result of an alleged identity theft and should be permanently blocked.

43.     Upon information and belief, one or more of the national consumer reporting agencies forwarded the February 2022 Disputes to both First Tech and Financial Assistance.

44.     In or around April 2022, Plaintiff reviewed her credit reports once again, hopeful that the harmful and inaccurate information had finally been removed from her credit reports. Again, Plaintiff was left disappointed.

45.     Upon information and belief, following the February 2022 Disputes, Equifax blocked the Financial Assistance Account from appearing in Plaintiff's credit file and/or consumer report(s). However, Equifax continued to report the First Tech Account in Plaintiff's credit file

and/or consumer report(s), though Equifax included notation in its reporting that the First Tech Account had been disputed.

46.    Upon information and belief, following the February 2022 Disputes, Experian blocked the Financial Assistance Account from appearing in Plaintiff's credit file and/or consumer report(s). However, Experian continued to report the First Tech Account in Plaintiff's credit file and/or consumer report(s), though.

47.    Upon information and belief, following the February 2022 Disputes, Trans Union continued to report the Financial Assistance Account in Plaintiff's credit file and/or consumer report(s), though Trans Union included notation in its reporting that the Financial Assistance Account had been disputed.

48.    Following the February 2022 Disputes, Plaintiff's living situation had become untenable. Plaintiff's parents had allowed Plaintiff's sister – the very person who had stolen Plaintiff's identity – to move into their home.

49.    In other words, Plaintiff was forced to live in the same home as the person who was ruining her life.

50.    Plaintiff applied to rent an apartment in or around April 2022 in San Marcus, Texas, in hopes to escape her problematic living circumstances and get away from her sister.

51.    Upon information and belief, the apartment complex obtained information concerning Plaintiff's credit report(s) from one or more of the CRA Defendants, and denied Plaintiff's housing application as a result of Plaintiff's poor credit worthiness.

52.    Plaintiff disputed at least two (2) more times with each of the bureaus in May 2022 (the "May 2022 Disputes").

53.    Within the May 2022 Disputes, Plaintiff included all the information from the February 2022 Disputes, though added in the fact that the identification that Plaintiff's sister presented to the car dealership when she took out a loan in Plaintiff's name was a forged temporary permit, with a picture of Plaintiff's sister and bearing Plaintiff's identifiers.

54.    The temporary permit reflected that despite listing Plaintiff's identifying information, Plaintiff's sister signed **her own name**, rather than Plaintiff's, making the fraud exceedingly obvious to all. Plaintiff included this document and a description of it in the May 2022 Disputes.

55.    Following the May 2022 Disputes, Trans Union **finally** blocked information from both the First Tech Account and the Financial Assistance Account from appearing in Plaintiff's credit file and/or consumer report(s).

56.    However, following the May 2022 Disputes, both Experian and Equifax continued to report the First Tech Account, despite the existence of four (4) separate disputes where Plaintiff alleged the account was the result of an identity theft.

57.    Upon information and belief, both of the Furnisher Defendants failed to reasonably reinvestigate Plaintiff's dispute(s) one (1) or more times following being notified of such dispute(s) by one (1) or more consumer reporting agency. This is evident based on the fact that the First Tech Account and the Financial Assistance Account remained in one (1) or more of Plaintiff's credit file(s) and/or consumer report(s) despite Plaintiff's multiple disputes.

58.    Upon information and belief, the Furnisher Defendants either did not investigate Plaintiff's disputes at all, or simply confirmed what they were already reporting was accurate without reviewing the substance of Plaintiff's disputes.

59.     Had either of the Furnisher Defendants conducted **any** reinvestigation of any kind, each would have quickly determined that the accounts in question were the definitive result of identity theft, and would have permanently blocked the information from appearing in Plaintiff's credit file(s) and/or consumer report(s).

60.     Upon information and belief, the CRA Defendants failed to reasonably reinvestigate Plaintiff's dispute(s). Instead, each of the CRA Defendants mindlessly parroted the inaccurate information being provided by the Furnisher Defendants without evaluating the substance of Plaintiff's dispute(s), or failed to conduct any reinvestigation at all.

61.     Despite the ample evidence provided by Plaintiff across several disputes, at various times each of the CRA Defendants continued to report either – or both – of the inaccurate accounts in Plaintiff's credit file(s) and/or consumer report(s).

62.     Therefore, upon information and belief, each of the CRA Defendants failed to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information each reported in Plaintiff's consumer reports and consumer information each sold to third parties as required by the FCRA.

63.     Upon information and belief, the CRA Defendants failed to maintain reasonable procedures to suppress inaccurate information furnished by the Furnisher Defendants, despite being on notice that the information was inaccurate.

64.     Plaintiff suffers from depression, post-traumatic stress disorder ("PTSD"), and is disabled. The circumstances detailed in this Complaint have been extremely traumatic for Plaintiff and have severely exacerbated her depression and PTSD. The stress and anxiety resulting from these circumstances have both been debilitating.

65.     Plaintiff has experienced physical manifestations of her emotional distress. Specifically, Plaintiff has felt so distressed that at times she finds it difficult to breathe. She has had anger outbursts due to the frustration she's experienced with respect to these circumstances, all of which has been dramatically made worse by the effort Plaintiff has been forced to expend to correct these credit reporting issues.

66.     Plaintiff has also experienced blood pressure issues due to the stress she has endured at the hands of the Defendants.

67.     Plaintiff has lost an inordinate amount of sleep due to the stress and distress she has faced as a result of the Defendants' conduct. With all of the other hazards going on in Plaintiff's life concerning the theft of her identity, the **last** thing she needed was additional stress caused by errors in her credit reports. She frequently finds herself unable to sleep or stay asleep throughout the night because of this.

68.     Upon information and belief, numerous prospective and potential creditors have viewed Plaintiff's credit file(s) and/or consumer report(s) prepared by each of the CRA Defendants since the December 2021 Disputes. Each of these reports included either the inaccurate First Tech Account and the inaccurate Financial Assistance Account.

69.     Upon information and belief, *but for* the reporting of these inaccurate tradelines, Plaintiff would have received more offers for credit than she did.

70.     Plaintiff later learned that on or about February 3, 2022, JP Morgan Chase Bank ("Chase") obtained Plaintiff's Trans Union credit report, resulting in a hard inquiry. Plaintiff does not know the basis for this hard inquiry.

71.     Upon information and belief, the party who requested a credit application with Chase, resulting in this hard inquiry, was Plaintiff's sister.

72.    Regardless, upon information and belief, the First Tech Account and the Financial Assistance Account appeared on the Trans Union credit report requested and reviewed by Chase.

73.    As a direct result of the Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to: extreme stress, anxiety, mental anguish, sleepless nights, emotional distress, a substantial amount of wasted time, invasion of privacy, decreased creditworthiness, inability to apply for credit, credit denial, financial strain, and other damages continuing in nature.

## COUNT I
### The CRA Defendants' Violations of 15 U.S.C. § 1681e(b)

74.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

75.    The FCRA requires consumer reporting agencies, like the CRA Defendants, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximal accuracy. 15 U.S.C. § 1681e(b).

76.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

77.    Upon information and belief, the CRA Defendants have each been sued by other consumers in the past who have alleged their dispute procedures were unreasonable and violative of the FCRA.

78.    Therefore, the CRA Defendants had actual notice of their deficient procedures.

79.    In this case, however, the CRA Defendants received actual notice that their procedures were unreasonable as applied to Plaintiff.

80.     It is wholly unreasonable to maintain procedures that allow a consumer reporting agency to report tradelines in a consumer report despite notice that such tradelines exist only as a result of identity theft.

81.     Specifically, it was wholly unreasonable for each of the CRA Defendants to report the First Tech Account and the Financial Assistance Account in Plaintiff's credit file(s) and/or consumer report(s) despite multiple disputes from Plaintiff which showed beyond any doubt that the accounts existed solely as a result of identity theft.

82.     Plaintiff disputed these accounts with each of the CRA Defendants multiple times and provided the CRA Defendants with sufficient information and documentation to determine, conclusively, that the accounts were the product of identity theft.

83.     As a result of the CRA Defendants' failures to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

84.     The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful. Therefore, the CRA Defendants are each individually liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

85.     Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, the CRA Defendants are each individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

86.     In any event, the CRA Defendants are each individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### The CRA Defendants' Violations of 15 U.S.C. § 1681i

87.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

88.    Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their credit file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

89.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate.

90.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to record the current status of the disputed information or delete the item from Plaintiff's credit report.

91.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

92.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

93.    As a result of the CRA Defendants' violations of 15 U.S.C. § 1681i, Plaintiff has suffered statutory and actual damages as detailed herein.

94.    Upon information and belief, the CRA Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain

language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

95.    Therefore, the CRA Defendants acted consciously in failing to adhere to their obligations under the FCRA.

96.    The CRA Defendants' violations of 15 U.S.C. § 1681i were willful. Therefore, the CRA Defendants are each individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

97.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681i were negligent. Therefore, the CRA Defendants are each individually liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. 15 U.S.C. § 1681o.

98.    In any event, the CRA Defendants are each liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

<u>COUNT III</u>
**The CRA Defendants' Violations of 15 U.S.C. § 1681c-2**

99.    Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

100.    The FCRA requires consumer reporting agencies, like the CRA Defendants, to block the reporting of any information in the file of a consumer that the consumer identifies as information resulting from an alleged identity theft. 15 U.S.C. § 1681c-2(a).

101.    The FCRA further requires consumer reporting agencies, like the CRA Defendants, to notify the furnishers of blocked information that the information may be a result of identity theft upon notice from the consumer. 15 U.S.C. § 1681c-2(b).

102.    The CRA Defendants violated 15 U.S.C. § 1681c-2 by failing to block all information concerning the First Tech Account and the Financial Assistance Account from

appearing in Plaintiff's credit file(s) and/or consumer report(s) following Plaintiff's multiple disputes – each of which clearly and unequivocally stated that the information existed as a result of identity theft.

103.    As a result of the CRA Defendants' violations of 15 U.S.C. § 1681c-2, Plaintiff has suffered statutory and actual damages as detailed herein.

104.    Upon information and belief, the CRA Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

105.    Therefore, the CRA Defendants acted consciously in failing to adhere to their obligations under § 1681c-2 of the FCRA.

106.    The CRA Defendants' violations of 15 U.S.C. § 1681c-2 were willful. Therefore, the CRA Defendants are each individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

107.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681c-2 were negligent. Therefore, the CRA Defendants are each individually liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. 15 U.S.C. § 1681o.

108.    In any event, the CRA Defendants are each liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT IV
### The Furnisher Defendants' Violations of 15 U.S.C. § 1681s-2(b)

109.    Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

110.    At all times pertinent hereto, the Furnisher Defendants were each a "person" as that term is defined by 15 U.S.C. § 168la(b) and a "furnisher of information" providing information about Plaintiff to the three major credit reporting agencies, the CRA Defendants.

111.    The Furnisher Defendants each have a duty to provide accurate information to consumer reporting agencies. See 15 U.S.C. § 1681s-2(a).

112.    The Furnisher Defendants each have a duty to promptly correct inaccurate information after receiving notice of a consumer's credit dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(a).

113.    The Furnisher Defendants also each have an obligation under 15 U.S.C. § 1681s-2(b) to: conduct an investigation after a consumer reporting agency notifies it that a consumer disputed the accuracy of the information it furnished; review all relevant information during its investigation of the dispute; report the results of the investigation to the relevant consumer reporting agency; and if the investigation reveals that the furnished information was incomplete or inaccurate, notify every consumer reporting agency that received the deficient information of the investigation results.

114.    If the investigation reveals the disputed information is incomplete, inaccurate, or unverifiable, it must be modified, deleted, or permanently blocked. 15 U.S.C. § 1681 s-2(b)(1)(E).

115.    Upon information and belief, one or more of the CRA Defendants forwarded Plaintiff's disputes to each of the Furnisher Defendants in or around December 2021, February 2022, and twice in May 2022.

116.    Upon information and belief, by example only and without limitation, the Furnisher Defendants each violated 15 U.S.C. § 1681 s-2(b)(1)(E) when they failed to delete and

permanently block information concerning the disputed accounts – which existed solely as a result of identity theft – from being furnished to the CRA Defendants.

117.    Upon information and belief, by example only and without limitation, the Furnisher Defendants each violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes after being notified of their existence by one or more of the CRA Defendants.

118.    Upon information and belief, by example only and without limitation, the Furnisher Defendants each failed to review all relevant information while investigating Plaintiff's disputes, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

119.    Upon information and belief, the Furnisher Defendants' actions in the instant matter are representative of their normal policies and procedures.

120.    Upon information and belief, the Furnisher Defendants' regular procedures only require them to complete a cursory review of consumer disputes, regardless of their content, magnitude, or frequency.

121.    Upon information and belief, the Furnisher Defendants' procedures only require them to respond to disputes with basic consumer information without conducting a reasonable investigation of the disputed information.

122.    In sum, each of the Furnisher Defendants' conduct violated § 1681s-2(b) of the FCRA.

123.    Upon information and belief, the Furnisher Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

124.     Therefore, the Furnisher Defendants acted consciously in failing to adhere to their obligations under the FCRA.

125.     Each of the Furnisher Defendants' willfully and/or negligently violated the foregoing provisions of the FCRA in the following manner:

a.     By willfully and/or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;

b.     By willfully and/or negligently failing to review all relevant information concerning whether Plaintiff was deceased;

c.     By willfully and/or negligently failing to report the results of its investigation of the inaccurate information to all credit reporting agencies;

d.     By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

e.     By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

f.     By willfully and/or negligently failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to credit reporting agencies; and

g.     By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

126.     The Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b) were willful. Therefore, the Furnisher Defendants are each individually liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

127.     Alternatively, the Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b) were negligent. Therefore, the Furnisher Defendants are each individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

128.     In any event, the Furnisher Defendants are each individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## **TRIAL BY JURY**

129.     Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann Parsell, respectfully requests judgment be entered against

Defendants, for the following:

A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;
B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;
C. Punitive damages pursuant to 15 U.S.C. § 1681n;
D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and
E. All pre-judgment and post-judgment interest as may be allowed under the law; and
F. Any other and further relief as the Court may deem just and proper.

Date: September 13, 2022,                    */s/ David A. Chami*
                                             David A. Chami, AZ No. 027585
                                             **The Consumer Justice Law Firm**
                                             8245 N. 85th Way
                                             Scottsdale, Arizona 85258
                                             Telephone: (480) 626-2359
                                             Email: dchami@cjl.law

                                             *Attorney for Plaintiff Ann Parsell*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2022, I electronically filed the foregoing with the

Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of

record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies

of the foregoing have not been provided via personal delivery or by postal mail.

                                             */s/ Nataly Clark*