UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ANN MARIE PARSELL, § | |
| *Plaintiff* § | |
| § | |
| vs. § | Case No.  SA-22-CV-01002-XR |
| § | |
| FIRST TECH FEDERAL CREDIT § | |
| UNION, § | |
| *Defendant* § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this date, the Court considered United States Magistrate Judge Elizabeth S. Chestney's Report and Recommendation ("R&R") in the above-numbered and styled case, filed February 3, 2025 (ECF No. 139), recommending that the Court deny the parties' cross-motions for summary judgment (ECF Nos. 102, 105). After careful consideration, the Court adopts the Magistrate Judge's recommendation in full as to Defendant's motion (ECF No. 105) and in part as to Plaintiff's motion (ECF No. 102).

### BACKGROUND[1]

This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* The FCRA primarily regulates consumer credit-reporting agencies ("CRAs") but also imposes obligations on "furnishers of information" to provide accurate information to CRAs and, relatedly, to conduct reasonable investigations in response to consumer disputes about the accuracy of such information.

Plaintiff Ann Marie Parsell alleges that she was a victim of identity theft by her sister, Carol Redus, resulting in several fraudulent debts in her name. Plaintiff originally named three CRAs—

---

[1] The following facts are undisputed unless otherwise noted.

Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("TransUnion")—and two furnishers of information—Financial Assistance, Inc. and First Tech Federal Credit Union ("First Tech")—as Defendants. Parsell has settled her claims against all Defendants except First Tech.

According to Parsell's complaint, in late 2021, she began receiving collection letters from Financial Assistance, alleging that she owed a debt relating to the purchase of a motor vehicle in 2017. ECF No. 1 ¶ 17. Initially, Parsell believed that the communications were a scam. ECF No. 102-1, Parsell Dep. at 30:1–5. She subsequently discovered, however, that two credit accounts that she had not opened and did not recognize were being reported in her credit reports—a First Tech tradeline with a past due amount of $18,159 and a Financial Assistance tradeline with a past due amount of $20,900. ECF No. 1 ¶¶ 18, 19, 24, 25; ECF No. 102-1, Parsell Dep. at 29:6–30:5. Parsell's investigation into the First Tech and Financial Assistance accounts revealed that the accounts were related to the 2017 First Tech auto loan obtained in her name by her sister, Carol Redus, using a forged identification card bearing Parsell's personal information and posing as Parsell.[2] *Id.* at 32:3–33:7. The loan documents, including the credit application and supporting documents, were completed and collected by Mission and submitted to First Tech, which approved the Loan and saved the Loan Documents in its records. ECF No. 102-02 (Loan Documents).

In October 2021, Parsell contacted First Tech by telephone and asked for copies of all documents related to the First Tech account. ECF No. 102-4. During the phone call, Parsell

---

[2] Though purportedly completed by Parsell, the Loan Documents contain several stray references to Redus and other suspicious discrepancies. For example, in support of her purchase agreement and credit application in Parsell's name, Redus provided a temporary driver's permit which included Parsell's name, a photograph of Redus, and a fictitious address on Wurzbach Road. ECF No. 102-02 at 5; ECF No. 102-03 (ID Photos). Redus mistakenly signed the fraudulent permit using her own name, "Carol L. Redus." ECF No. 102-02 at 5. Redus made a similar mistake elsewhere in the Loan Documents; at one point, to authenticate a corrected mistake, Redus wrote her own initials, "CR." *Id.* at 4. Redus's credit application includes Plaintiff's name and Social Security Number, but lists an address of "10004 Wurzbach Rd, San Antonio, TX 78130." *Id.* at 3. While there is a building at 10004 Wurzbach Road in San Antonio, Texas, it is apparently a UPS Store, with a zip code of 78230.

communicated to First Tech that the account was the product of fraud, that her sister was the perpetrator of that fraud, and that Parsell was in the process of filing charges related to that fraud with the police. *Id.* at 6:16–6:20; 7:25–7:30, 8:56–10:00. That same month, Parsell filed an identity theft report with the FTC and a police report with the New Braunfels Police Department. ECF No. 102-5, at 2–3; ECF No. 102-6 at 2–4. Parsell also contacted the CRAs to dispute the account.

When a consumer contacts a CRA to dispute information about an account, the CRA communicates details about the consumer's dispute to the furnisher of that information through an internet-based system that permits the exchange of data about consumers between furnishers and CRAs known as e-OSCAR. ECF No. 102-7, Ivanovic Dep. at 55:2–56:14. This communication from the CRA to a credit furnisher comes in the form of an "automated consumer dispute verification form" ("ACDV"), which contains details about the nature of the consumer's dispute. If the consumer provides documents to the CRA in connection with their dispute, images of those documents are included with the ACDV and transmitted to the furnisher. *Id.* at 119:1–4.

In response to an ACDV, a furnisher must:

(1) "conduct an investigation with respect to the disputed information,"

(2) "review all relevant information provided by the consumer reporting agency,"

(3) "report the results of the investigation" to the CRA,

(4) if the investigation finds that the disputed information is inaccurate or incomplete, notify all of the other nationwide CRAs to which the person furnished the information; and

(5) if the investigation finds that that disputed information is "inaccurate or incomplete or cannot be verified," modify, delete, or permanently block its reporting of such information to the CRA.

15 U.S.C. § 1681s-2(b)(1)(A)–(E).

First Tech received seven ACDVs from the three CRAs (Experian, Equifax, and TransUnion) regarding Parsell's dispute from October 2021 to October 2022. *See* ECF Nos. 107-3, 107-4, 107-5, 107-6. All seven ACDVs reported that Parsell was claiming the debt was the result of "true identity fraud" and that the account had been "fraudulently opened" and requested that First Tech confirm Parsell's identity. *See id.*

When First Tech receives an ACDV, it refers the matter to its fraud department for review. ECF No. 115-2, Ivanovic Dep. at 59:13–19. First Tech documents outline identity theft "red flags" its fraud department employees should look for in evaluating both direct and indirect claims of fraud. ECF No. 115-4, Skaale Dep. at 85:23–86:4, 95:24–96:1, 97:20–25. These "red flags" include a dissimilar signature; any indication that identification has been altered; conflicts in the information provided by the consumer throughout the documents; and fictitious addresses, such as places where mail could not actually be delivered.[3] *Id.* at 108:24–113:15. The Loan Documents submitted in Parsell's name—to which First Tech had access *at all times* during the ACDV response period—bear many of these hallmarks of fraud. *Id.* at 177:10–14; ECF No. 115-4, Hernandez Dep. at 72:20–23.

First Tech did not identify any of these "red flags" in the Loan Documents, however, because it failed to conduct any substantive investigation in response to six of the seven ACDVs based on its policies for confirming consumer identities and resolving duplicate disputes. To confirm a consumer's identity, First Tech typically relies on a signed and notarized affidavit form available from First Tech directly. It also accepts comparable documents, such as a notarized written statement and identification documents. ECF No. 102-10, Skaale Dep. at 56:4–57:2. When

---

[3] These red flags appear to be drawn from federal guidelines intended to assist financial institutions and certain creditors in establishing mandatory programs for detecting, preventing, and mitigating identity theft. 12 C.F.R. Pt. 41, App. J, Supp. A (Interagency Guidelines on Identity Theft Detection, Prevention, and Mitigation).

this documentation is not provided, First Tech does not investigate the dispute. ECF No. 102-14, Hernandez Dep. at 49:20–3. It is also First Tech's policy not to conduct any new review of a previously filed claim of identity theft if there are no new documents submitted in addition to what was submitted with the first dispute. ECF No. 115-2, Ivanovic Dep. at 30:12–21, 38:15–18. The submission of a subsequent claim without additional information is considered a duplicate dispute, and First Tech simply confirms the information on file without a substantive review. ECF No. 115-3, Skaale Dep. at 172:9–173:13.

**ACDVs 1 and 2**. First Tech received the first and second ACDVs from Experian and Equifax on October 18 and 19, 2021, respectively. ECF No. 107-4 at 1–2; ECF No. 107-3 at 1–2. These ACDVs were referred to First Tech's fraud department, but the department did not conduct any investigation into the dispute other than comparing the account information contained in its system with the information received from the CRAs. ECF No. 102-14, Hernandez Dep. at 51:12–24; ECF No. 102-7, Ivanovic Dep. at 89:7–90:7. First Tech concluded that there was insufficient information submitted in support of Parsell's dispute and that she was required to submit a signed and notarized affidavit as well as an identification card for her claim to be substantively investigated. ECF No. 107-5 at 3. First Tech reported to Experian on November 2, 2021, and Equifax on November 8, 2021, that the disputed information was accurate. ECF No. 107-4 at 1; ECF No. 107-3 at 1.

**ACDVs 3 and 4.** First Tech received the third and fourth ACDVs from Experian and Equifax on November 19 and 22, 2021, respectively. ECF No. 107-4, at 3–4. First Tech did not conduct any investigation in response to these two ACDVs or refer the matter to the fraud department as no new information was provided. ECF No. 107-5 at 3. First Tech reported to Experian and Equifax on December 6 and 8, 2021, that the disputed information was accurate. *Id.*

5

**ACDV 5.** First Tech received the fifth ACDV from TransUnion on December 1, 2021. ECF No. 107-4 at 5–6. In support of this dispute, TransUnion provided First Tech with a copy of Parsell's dispute letter, her photo identification, and the police report she had filed about the identity theft. *Id.* at 5. First Tech's account notes indicate receipt of various documents on December 8, 2021. ECF No. 107-5 at 3. However, despite new information being submitted in support of the claim, First Tech did not conduct any investigation into the dispute or refer the dispute to the fraud department, and First Tech responded to TransUnion that the disputed information was accurate on December 14, 2021. ECF No. 107-4 at 6; ECF No. 115-5, Moreno Dep. at 116:16–117:11.

Although the fifth ACDV was not in fact duplicative, First Tech's Head of Fraud Operations, Ashley Skaale, testified that the police report would not have triggered an investigation because it did not have details pertaining to the First Tech accounts and could not be used to validate Parsell's identity. ECF No. 115-3, Skaale Dep. at 53:7–11, 218:11–12, 240:10–21. She further testified that the photo identification was insufficient to confirm Parsell's identity and trigger an investigation because Parsell had not submitted a notarized affidavit using First Tech's form or the identification documents needed in lieu of the affidavit, which include a front and back color copy of the identification along with a front and back color copy of a Social Security card. *Id.* at 290:7–20.

**ACDV 6.** First Tech received the sixth ACDV on June 1, 2022. ECF No. 107-4 at 7–8. Equifax provided First Tech with several additional documents in support of this dispute, including a statement by Parsell regarding the dispute, a copy of Parsell's identification card, the suspected perpetrator's name, and a copy of the FTC identity theft report. *Id.*; ECF No. 107-5 at 2; ECF No. 115-5, Moreno Dep. at 122:2–10, 131:3–133:2. Parsell's statement explained that the temporary

6

identification her sister had used to purchase the car was forged and that she had never used the number or lived at the address provided in the loan application (which was not a residential address). ECF No. 115-5, Moreno Dep. at 131:23–132:13.

In response to this ACDV, First Tech's fraud department conducted its first and only investigation into the disputed account. ECF No. 107-5 at 2. However, the fraud department was unable to complete its investigation by the deadline to respond to the ACDV. So, First Tech reported to Equifax that the disputed information was correct on June 21, 2022, without having the results of the fraud department's investigation. ECF No. 107-4 at 8; ECF No. 115-5, Moreno Dep. at 122:2–130:8. Two days later, on June 23, 2022, the fraud department made its determination that the information provided by Parsell appeared to be "dubious or unfounded" and that the information listed on the account was accurate. ECF No. 107-5 at 2.

**ACDV 7.** First Tech received a final ACDV from Experian on October 27, 2022. ECF No. 107-4 at 9–10. In response to this notice, First Tech communicated to Experian that the disputed information was accurate on November 10, 2022. *Id.* at 10. First Tech did not conduct any additional investigation after June 2022. ECF No. 107-5 at 2.

Plaintiff initiated this action in September 2022, alleging, among other things, that First Tech's responses to the ACDVs violated the FCRA. As of October 2022, the First Tech account continued to appear on Parsell's credit reports. ECF No. 111-1 at 5; ECF No. 111-2 at 5. Parsell's sister, Redus, was indicted on charges of identity theft related to the auto loan on October 16, 2023. ECF No. 102-13.

**The Parties' Cross-Motions for Summary Judgment**

Parsell and First Tech filed cross-motions for summary judgment on Parsell's FCRA claim. To establish that a furnisher of information has violated its duties under 15 U.S.C. § 1681s-2(b), a consumer must prove four elements:

> (1) the furnisher provided inaccurate credit information about Plaintiff to a CRA; (2) Plaintiff notified a CRA that this information in [their] credit report was inaccurate; (3) the CRA notified the furnisher of the dispute; and (4) after receiving this notice, the furnisher failed to conduct a reasonable investigation and provide notice to the CRA to correct the reporting errors.

*Schoch v. Wells Fargo Home Mortg.*, No. 4:16-CV-619-ALM-CAN, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *report and recommendation adopted*, 2017 WL 2312079 (E.D. Tex. May 26, 2017); *see also Donnelly v. JPMorgan Chase, NA*, No. H-13-1376, 2014 WL 429246, at *5 (S.D. Tex. Feb. 4, 2014).

It is undisputed that Parsell notified several CRAs of her claim of identity theft and fraud and that the CRAs notified First Tech of the dispute through seven ACDVs in 2021 and 2022. First Tech does not dispute that the account was fraudulently opened and, accordingly, that the information it provided to the CRAs in response to the ACDVs was inaccurate. Thus, only the fourth element of Parsell's claim is in dispute—whether First Tech conducted a reasonable investigation in response to the ACDVs.

First Tech argues that Parsell lacks standing to sue under the FCRA because she has suffered only hypothetical, intangible harm and that "it investigated and reported each and every [ACDV] that was received." ECF No. 105 at 9.

Parsell argues that First Tech's response was unreasonable as a matter of law because:

(1) First Tech repeatedly verified that she was the person who executed the auto loan, even though up until June 2022, First Tech never conducted any inquiry into the accuracy of the account information;

8

    (2) First Tech's policy not to investigate fraud allegations without supporting documentation and to merely compare account information was unreasonable, particularly in light of the fact that First Tech had the loan application containing numerous red flags suggesting identity theft at its disposal but never consulted those documents;

    (3) First Tech failed to uniformly apply its policy when Parsell submitted supporting documentation with the fifth ACDV and First Tech nonetheless treated it as a duplicate dispute and did not conduct a substantive investigation; and

    (4) when First Tech finally conducted an investigation into the account in response to the sixth ACDV, it confirmed the accuracy of the information in an ACDV response prior to its fraud department completing its review.

ECF No. 102.

In addition to First Tech's liability, the parties also dispute whether Parsell is entitled to punitive damages for willful violations of the FCRA under 15 U.S.C. § 1681n(a)(2).

The Court referred both motions to the Magistrate Judge.

**The Magistrate Judge's Recommendation**

On February 3, 2025, the Magistrate Judge issued an R&R recommending that the Court deny both motions for summary judgment as to First Tech's liability under the FCRA and Parsell's entitlement to punitive damages . ECF No. 139.

To begin, the Magistrate Judge concluded that Parsell has standing to sue based on the distribution of inaccurate credit reports to a third-party and the alleged emotional distress she suffered while repeatedly attempting to correct the information in her report over a period of several years. *Id.* at 12–16.

Turning to the merits of Parsell's FCRA claim, the Magistrate Judge concluded that material fact questions precluded summary judgment as to whether First Tech conducted a reasonable investigation after receiving notice of Parsell's disputes.

The Magistrate Judge found that First Tech failed to even satisfy its initial burden of identifying the portions of the record that it believed demonstrated the absence of a triable fact issue. First Tech's notes on Parsell's account and its ACDV responses establish only that it responded to the various ACDVs it received, not that it conducted a reasonable investigation (or any investigation for that matter) before responding to the ACDVs in compliance with its obligations under Section 1681s-2(b)(1) of the FCRA.

> First Tech cannot prevail on a motion for summary judgment based on the undisputed reasonableness of its investigation into Parsell's dispute when the record establishes that it did not conduct any investigation with respect to six of the seven ACDVs it received and, as to the one substantive review it performed, submitted an ACDV response prior to receiving the results of the fraud department's investigation.

ECF No. 139 at 19.

Turning to Plaintiff's motion, the Magistrate Judge observed that First Tech's failure to consider the Loan Documents or conduct any investigation into the account because Parsell had not submitted a notarized affidavit was "particularly suspect in light of the fact that Parsell's dispute was an indirect one." *Id.* at 24. First Tech receives claims of fraud both directly—from consumers themselves—and indirectly—from CRAs. ECF No. 102-7, Ivanovic Dep. at 62:13–22. In indirect disputes like Parsell's, First Tech does not have any direct contact with a consumer; and the consumer does not have access to First Tech's preferred form. *Id.* And when the form affidavit or other identifying documentation are not included in the ACDV, First Tech does not contact the consumer to request supplementation, even though First Tech has the consumer's contact information and could theoretically do so. *Id.* at 65:2–66:1.

Of course, the mere existence of a company policy requiring a consumer to file a fraud affidavit before the furnisher will conduct an investigation into a dispute "does not resolve the inquiry into the reasonableness of its investigation" (or lack thereof). *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 619 (6th Cir. 2012). First Tech insists that a factfinder could determine that its policy is reasonable, because, without that information, First Tech cannot confirm that the true consumer is the person reporting the identity theft. Although it "seems unlikely on this record" the Magistrate ultimately agreed that it was possible. ECF No. 139 at 25. The Magistrate Judge also agreed with First Tech that the existence of a cure procedure for correcting erroneous ACDV responses created a triable fact issue as to whether it was reasonable for First Tech to respond to the sixth ACDV *before* completing its investigation. *Id.* at 26–27.

Finally, the Magistrate Judge concluded that neither party is entitled to summary judgment on the question of punitive damages. She rejected First Tech's argument that Parsell is not entitled to such damages because Section 41.005(a) of the Texas Civil Practice and Remedies Code precludes an award of exemplary damages for harm caused by the criminal act of a third party. *See* ECF No. 139 at 38. While Redus's criminal conduct undoubtedly caused harm, Parsell's theory of injury in this case action relates not to the identity theft itself but to First Tech's failure to reasonably investigate her dispute of the fraudulent debt, so that the associated information could be removed from her credit report. Redus did not cause First Tech to take or not take certain actions in responding to her disputes. Moreover, the Texas Civil Practice and Remedies Code is inapplicable to this case, which is premised on federal question jurisdiction rather than diversity. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991).

Still, the Magistrate Judge reasoned that the Court would need to determine at trial whether Parsell had presented sufficient evidence that any FCRA violations had been knowing, intention,

or reckless to submit the question of punitive damages to the jury. *See* ECF No. 139 at 29; *Safeco Ins. Co of Am. v. Burr*, 551 U.S. 47, 9–60, 70 (2007).

## DISCUSSION

### I. Legal Standard

A party may serve and file objections to a Report and Recommendations within fourteen days. FED. R. CIV. P. 72(a), (b)(2). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive [sic] or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Courts must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Any sections that were not clearly objected to are reviewed for clear error to determine whether they are contrary to law. *Id.*; *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989).

The Magistrate Judge's recommendation was electronically served on the parties on February 2, 2025. ECF No. 139.

### II. Analysis

#### A. First Tech's Motion for Summary Judgment (ECF No. 105)

First Tech did not file any objections to the R&R. Because no party has objected to the Magistrate Judge's R&R as to Defendant's motion (ECF No. 105), the Court need not conduct a *de novo* review of the Magistrate Judge's analysis of that motion. *See* 28 U.S.C. § 636(b)(1). The Court has reviewed the R&R addressing Defendant's motion and finds them to be neither clearly

erroneous nor contrary to law. *Wilson*, 864 F.2d at 1221. Accordingly, the Court adopts the Magistrate Judge's recommendation to deny First Tech's motion (ECF No. 105).

### B. Parsell's Motion for Partial Summary Judgment (ECF No. 102)

Parsell filed timely objections to the portions of the R&R finding a jury question on the reasonableness of First Tech's investigations in response to the fifth and sixth disputes. *See* ECF No. 140. The reasonableness of an investigation and adequacy of procedures used are "judged according to what a reasonably prudent person would do under the circumstances." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001). "In the majority of cases, reasonableness is a question for the jury." *Id.* However, "reasonableness becomes a question of law if the facts are undisputed." *Cont'l Sav. Ass'n v. U.S. Fidelity*, 762 F.2d 1239, 1243 (5th Cir. 1985).

The Court agrees with Parsell that she is entitled to summary judgment with respect to First Tech's response to the fifth ACDV submitted in connection with her dispute—but not *only* because First Tech erroneously treated it as duplicative when Parsell had, in fact, submitted additional documents to TransUnion that were included in the ACDV. Even aside from the submission of these additional documents, First Tech should not have treated the fifth ACDV as duplicative because, as explained below, it had not satisfied its obligations under the FCRA with respect to any of the first four ACDVs. *See* 15 U.S.C. § 1681s-2(a)(8)(F)(ii). *In other words, Parsell is entitled to summary judgment on her claims that First Tech violated the FCRA by failing to conduct an investigation into any of the first five ACDVs it received in connection with her dispute.*

In this Court's view, the text of the FCRA does not excuse First Tech from conducting substantive investigations in response to *indirect* claims based on a consumer's failure to confirm her identity (using First Tech's preferred forms or otherwise). Here, a comparison of the FCRA's provisions governing furnishers' resolution of *direct* disputes is warranted.

13

A consumer can dispute account information directly with the furnisher by submitting a notice that (i) identifies the specific information that is being disputed; (ii) explains the basis for the dispute; and (iii) *includes all supporting documentation required by the furnisher* to substantiate the basis of the dispute. 15 U.S.C. § 1681s-2(a)(8)(D).

After receiving a notice of dispute from a consumer *meeting these requirements*, the furnisher must (i) conduct an investigation with respect to the disputed information; (ii) review all relevant information provided by the consumer with the notice; (iii) complete and report the results of the investigation to the consumer on the same timeline applicable to indirect disputes through a CRA; and (iv) promptly notify each CRA to which incorrect information was furnished of the corrections that need to be made. *Id.* § 1681s-2(a)(8)(E).

In resolving a *direct* dispute, a furnisher need not conduct an investigation if the furnisher reasonably determines that the dispute is frivolous or irrelevant because the consumer (I) failed to provide sufficient information to investigate the disputed information, or (II) submitted a duplicate dispute, either directly *or through a CRA*, with respect to which the furnisher had already performed its investigative duties. *Id.* § 1681s-2(a)(8)(F)(i). In such cases, however, the furnisher must notify the *consumer* of its determination that the dispute was frivolous or irrelevant within five days after making such a determination. *Id.* § 1681s-2(a)(8)(F)(ii).

In other words, the furnisher can only decide to forgo an investigation of a dispute altogether based on a *consumer*'s failure to provide required documentation when the consumer submits dispute *directly* to the furnisher. *See id.* § 1681s-2(a)(8)(D), (F)(i). And a furnisher can decline to reinvestigate *indirect* disputes from CRAs only if the furnisher satisfied its FCRA obligations as to the earlier dispute. *See id.* § (F)(i)(ii).

Section 1681s-2(b), which governs indirect disputes submitted by CRAs, requires furnisher to "conduct an investigation with respect to the disputed information," review the information submitted to the CRA by the consumer, and inform the CRA of the results of its investigation. *See id.* § 1681s-2(b)(1)(A)–(C). In indirect disputes, the FCRA vests CRAs—not furnishers—with the authority to terminate investigations based on deficiencies in the information provided by the consumer *and* the duty to inform the consumer that determination. 15 U.S.C. § 1681i(a)(3)(A). This arrangement is unsurprising because in an indirect dispute, the CRA is, by definition, the consumer's primary point of contact.

The Court agrees with Parsell's assertion that "[t]he structure of the FCRA does not leave room for a furnisher to impose unique or additional requirements upon the form or detail of a consumer's dispute." ECF No. 140 at 14 n.2. Unequivocally, a furnisher that receives an ACDV *must* investigate the dispute based on its own records and its review of the documents included in the ACDV, whether or not the consumer submits documents confirming her identity.[4]

Moreover, a cursory review for mere data conformity, rather than a substantive investigation into identity theft, does not satisfy Section 1681s-2(b)'s requirement that furnishers conduct a reasonable investigation into indirect disputes, especially considering the numerous red flags present in the Loan Documents. Indeed, the fraud investigator assigned to Parsell's dispute conceded in her deposition that evaluating the consistency of the data between First Tech's databases and the information available from the CRAs does not give any indication of whether identity theft actually occurred. ECF No. 115-5, Moreno Dep. at 114:19–24. Other district courts

---

[4] A circular published by the Consumer Financial Protection Bureau shortly after this lawsuit was filed confirms the Court's understanding of the FCRA's text: "furnishers must reasonably investigate all indirect disputes received from [CRAs] – even if such disputes do not include the entity's preferred format, preferred intake forms, or preferred documentation or forms." Consumer Financial Protection Bureau Circular 2022-07, Reasonable investigation of consumer reporting disputes, https://perma.cc/5NRB-SMDJ.

have awarded summary judgment to FCRA plaintiffs where the furnisher ignored its own computer records clearly verifying the basis of the consumer dispute. *See, e.g.*, *Robertson v. J.C. Penney Co.*, No. 2:06CV3KSMTP, 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) (granting summary judgment to consumer where "in spite of having information at their access to clearly verify that the plaintiffs' had paid this debt, GE employees responded to the TransUnion and Equifax ACDVs that the plaintiffs' account was properly charged off for nonpayment").

Because First Tech failed to satisfy its obligations as to the very first ACDV under the FCRA, it should not have treated any of Parsell's subsequent four ACDVs as duplicative, and Parsell is entitled to summary judgment based on First Tech's failure to investigate all five ACDVs.

With respect to the sixth ACDV, Parsell asserts that the mere existence of a cure procedure for correcting premature ACDV responses does not create a triable fact issue as to the reasonableness of First Tech's pre-investigation response, especially considering First Tech never availed itself of that cure procedure (because its investigation concluded that the dispute was unfounded). *See id.* at 19. The Court, however, is not aware of any mandatory procedures under the FCRA for furnishers who are unable to complete their investigation by the deadline to respond to an ACDV. Accordingly, it will be up to the factfinder to determine whether First Tech's approach—to prematurely confirm the accuracy of the account information and rely on its ability to correct its response after the completion of the investigation—is reasonable.

Similarly, the Court cannot assume that First Tech's investigation of Parsell's dispute was unreasonable just because investigators ultimately reached the wrong conclusion or because they failed to complete their investigation by the deadline to respond to the ACDV. *See Cousin*, 246 F.3d at 368; *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016) ("We

emphasize that what constitutes a 'reasonable investigation' will vary depending on the circumstances of the case[.]"); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("[W]hat is a reasonable investigation by a furnisher may vary depending on the circumstances."); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) ("[T]he reasonableness of an investigation depends on the facts of the particular case.").

Here, the Court knows almost nothing about how First Tech's only investigation into any of the ACDVs resulted in the conclusion that Parsell's dispute was "dubious or unfounded." Accordingly, Parsell is not entitled to summary judgment on her claim that First Tech's response to the sixth ACDV was unreasonable.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** the Magistrate Judge's recommendation (ECF No. 139).

First Tech's motion for summary judgment (ECF No. 105) is **DENIED**, and Parsell's motion for partial summary judgment on liability (ECF No. 102) is **GRANTED IN PART AND DENIED IN PART**. The Court concludes that Parsell is entitled to summary judgment on her claim that First Tech violated the FCRA by failing to conduct an investigation in response to any of the first five ACDVs it received from CRAs in connection with her dispute. The motion is denied in all other respects.

It is so **ORDERED**.

**SIGNED** this 3rd day of March, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE